Susan BUSCHMANN, et al., Plaintiffs,

v.

LITTLE ROCK NATIONAL AIRPORT, et al., Defendants.

No. 3–04–MC–029–L.

United States District Court,
N.D. Texas,
Dallas Division.

May 26, 2004.

115

Arthur Alan Wolk, Wolk & Genter, Philadelphia, PA, for plaintiff.

Courtney R. Bateman, Dombroff & Gilmore, P.C., Washington, DC, Robert R. Cole, Jr., Brady & Cole, Dallas, TX, for Defendants.

John H. Martin, Thompson & Knight, Dallas, TX, for Respondent.

## MEMORANDUM OPINION AND ORDER

KAPLAN, United States Magistrate Judge.

Defendants Little Rock National Airport and Little Rock Municipal Airport Commission (collectively referred to as "LRNA") have filed a motion to compel the production of a cockpit voice recorder ("CVR") audio recording. For the reasons stated herein, the motion is granted.

## I.

Shortly before midnight on June 1, 1999, American Airlines Flight 1420 from Dallas/Fort Worth International Airport to Little Rock International Airport crashed while attempting to land in a severe thunderstorm with heavy crosswinds. The aircraft hydroplaned off the runway, crashed into a light stanchion, broke apart, and caught fire. Ten passengers and the pilot, Captain Richard Buschmann, were killed in the crash. More than 80 others, including flight attendants Laurie Nelson and Jennifer Buck, were injured.[1]

Following this incident, the Buschmann Estate, Nelson, and Buck sued LRNA in Arkansas federal court alleging, *inter alia,* that the airport was negligent in maintaining a non-standard runway safety area and using non-frangible supports for the approach light systems. *Buschmann v. Little Rock National Airport, et al.,* No. 4–01–CV–00347–SWW *and Nelson, et al. v. Little Rock National Airport, et al.,* No. 4–02–CV–00056–SWW ("Arkansas litigation"). One of LRNA's defenses is that the negligence of Captain Buschmann and his flight crew was the sole proximate cause of the accident. In an attempt to convey to the jury a sense of the "total cockpit environment" leading up to the crash, LRNA subpoenaed the CVR audio recording of the final 31 minutes and five seconds of Flight 1420.[2] Non-party American Airlines, Inc. ("AA") objects to producing the CVR audio tape, arguing that the CVR transcript, which has been made available to the public by the National Transportation Safety Board ("NTSB"), is sufficient to provide LRNA with the information it needs to

1. The facts leading up to this crash are discussed at length in an opinion by Judge G. Thomas Eisele in a Multidistrict Litigation proceeding brought by passengers and their families against American Airlines, Inc., *In re Aircraft Accident at Little Rock, Arkansas on June 1, 1999,* 231 F.Supp.2d 852, 858–68 (E.D.Ark.2002), *aff'd,* 351 F.3d 874 (2003). LRNA was not a party to the MDL action.

2. "The CVR records on a 30–minute continuous loop tape all audible sounds in the cockpit, such as intra-cockpit conversations and radio conversations between the crew of the plane and ground stations and other planes." *In re Air Crash Disaster at John F. Kennedy International Airport on June 24, 1975,* 687 F.2d 626, 630 (2d Cir.1982). In a telephone conference with the magistrate judge, counsel for LRNA clarified that they sought production of only the cockpit area microphone CVR recording.

receive a fair trial. LRNA then filed this miscellaneous action in Dallas federal court to compel production of the CVR audio recording. The issues have been briefed by the parties and the motion is ripe for determination.

## II.

Discovery of CVR transcripts and recordings is governed by 49 U.S.C. § 1154. This statute provides, in relevant part:

Except as provided in paragraph (4)(A) of this subsection, a court may allow discovery by a party of a cockpit or surface vehicle recorder recording if, after an in camera review of the recording, the court decides that—

(A) the parts of the transcript made available to the public ... and to the party through discovery ... do not provide the party with sufficient information for the party to receive a fair trial; and

(B) discovery of the cockpit or surface vehicle recorder recording is necessary to provide the party with sufficient information for the party to receive a fair trial.

49 U.S.C. § 1154(a)(3) (West Supp.2003). Section 1154 was originally enacted as part of the Independent Safety Board Act Amendments of 1990. *See* S.Rep. No. 101–450, 1990 U.S.C.C.A.N. 6376 (101st Cong., 2d Sess.), *available at* 1990 WL 201700 (Aug. 30, 1990). One of the major purposes of this legislation was to safeguard or protect the NTSB against premature public speculation regarding the cause of an airline crash so that the agency may "conduct a full and fair investigation." *Id.*, 1990 U.S.C.C.A.N. at 6381. As the Senate Committee on Commerce, Science, and Transportation recognized:

In the recent past, tort litigants increasingly have initiated law suits against the NTSB to gain access to and/or establish control over ongoing aircraft accident investigations being conducted by the NTSB. Courts typically have recognized and appreciated the important public purpose served by the NTSB's ability to conduct prompt investigations without the burdens and interference that would stem from injecting the civil litigation interests into the NTSB's accident investigation process. [Citations omitted]. These cases, however, have resulted in needless delays in these investigations and have required the expenditure of considerable resources by the NTSB and Department of Justice....

\* \* \* \* \* \*

[T]he Committee strongly believes that the ability of the NTSB to conduct investigations independently, thoroughly, and in a timely manner for the benefit of the public, should not be compromised.

*Id.*, 1990 U.S.C.C.A.N. at 6380.

Another purpose of the statute was to strike a balance between the privacy interests of crew members and the need for full and fair investigations. *Id.*, 1990 U.S.C.C.A.N. at 6381. These sometimes competing interests were recognized by President George H.W. Bush when he signed the bill into law:

I am also concerned that the provision of S. 3012 dealing with the disclosure of airline cockpit voice recorder transcripts and recordings be interpreted in a manner that is fair to all parties. It is important to protect these materials from sensationalism and unwarranted disclosure, but it is also important that courts provide prompt and complete disclosure to litigants with an interest in judicial proceedings involving aircraft accidents. Every effort should be made to construe the provision in S. 3012 in a way that preserves an appropriate balance between these goals.

1990 U.S.C.C.A.N. 6381–1, Statement by President George Bush Upon Signing S. 3012 (Nov. 28, 1990), 26 *Weekly Compilation of Presidential Documents* 1935, *available at* 1990 WL 300993 (Dec. 3, 1990).

## A.

■ In an effort to determine whether discovery of the CVR audio recording was necessary to provide LRNA with sufficient information to receive a fair trial, the court ordered AA to produce the audio tape for *in camera* review. AA complied with the order, but argues that an *in camera* inspection is not appropriate unless and until LRNA overcomes the public policy and privacy concerns

that prompted Congress to limit discovery of such recordings.

The court initially observes that the two-step approach advocated by AA is not supported by the statute or case law. To the contrary, the express language of section 1154(a)(3) requires the court to review the CVR recording *in camera*. *See* 49 U.S.C. 1154(a)(3). Moreover, even if LRNA was required to overcome the policy justifications of the statute, that burden is easily satisfied here. The primary motivation behind the enactment of section 1154 was to prevent private litigants from interfering with an ongoing NTSB investigation. Because the NTSB has concluded its investigation of the crash and issued a final report, that concern is no longer an issue. Congress also sought to protect the privacy interests of crew members by limiting discovery of CVR recordings. However, as the underlying lawsuits were initiated by crew members and their families, any right to privacy has been waived.[3] The court therefore concludes that an *in camera* review of the CVR audio recording is warranted.

## B.

LRNA offers three reasons why the CVR transcript is inadequate to ensure a fair trial and why discovery of the CVR recording is necessary. First, LRNA maintains that the CVR transcript does not reflect the tone of voice, pitch, and inflection of statements made by the flight crew. Second, LRNA contends that the CVR audio tape will show that the flight crew did not make certain "callouts" as required by AA policy, specifically the "callout" to man or deploy the spoilers. Third, LRNA believes that the CVR recording is necessary to establish the level of noise in the cockpit, an issue raised by the first officer, who testified that he could not hear the second wind shear alert provided by

the air traffic controller and other statements reflected in the transcript.

After reading the CVR transcript and listening to the CVR recording, the court determines that the first and third reasons offered by LRNA are sufficient to compel production of the audio tape.[4] As other courts have noted, a transcript cannot reflect the true situational environment in the cockpit. *See McCoy v. Southwest Airlines Co., Inc.*, 208 F.R.D. 617, 620 (C.D.Cal.2002); *In re Aircrash Near Roselawn, Indiana on October 31, 1994*, MDL–1070, No. 95–C–4592, op. at 2–3 (N.D.Ill. Dec. 4, 1996), *reproduced at* Def. Mot., Exh. D at 2–3. The tone of voice, pitch, and inflection of statements made by crew members, all of which may be relevant to their state of mind, emotional condition, and situational awareness, are completely absent on the printed page. At a minimum, access to information on the CVR audio recording is reasonably calculated to lead to the discovery of admissible evidence.

AA counters that this rationale renders the statute meaningless, as it provides no basis for differentiating cases in which discovery should be allowed from those cases in which discovery is not warranted. However, the relevancy principles of Fed.R.Civ.P. 26(b) provide the necessary differentiating factor. If the flight crew's state of mind is irrelevant to the issues in the underlying case, production of the CVR audio recording is not necessary to ensure a fair trial. *See United States v. Moussaoui*, 2002 WL 31052374 at *1 (E.D.Va. Sept. 13, 2002) (deferring ruling on government's motion for protective order pending further explanation of relevance of CVR recording to any issue in dispute). By contrast, LRNA argues that the contributory negligence of Captain Buschmann and the flight crew was the sole proximate cause of the accident. The crew's state of mind, as reflected in tone of voice, pitch, and inflection

---

**3.** It is telling that the plaintiffs in the Arkansas litigation have declined to take a position in this discovery dispute. (*See* Jt. Stat. Rep. at 1).

**4.** LRNA's second argument, that the CVR recording is necessary to show that the flight crew did not make certain "callouts," is nonsensical. The transcript reflects that no "callout" was made to

man the spoilers, and neither party disputes that the spoilers were not armed or deployed as required by AA policy. *See also In re Aircraft Accident at Little Rock, Arkansas*, 351 F.3d at 880 (affirming district court's finding that accident would not have occurred had flight crew armed or manually deployed spoilers).

of their statements, is clearly relevant to this contributory negligence defense.

In addition, First Officer Michael Origel has testified that he did not hear the second wind shear alert from the tower, as well as other statements reflected on the CVR transcript, "because there was noise in the cockpit and a lot was going on." (*See* Def. Mot. at 6). LRNA cannot assess the accuracy of this testimony based on the transcript alone. Consequently, discovery of the CVR audio recording is necessary to provide LRNA with the information it needs to receive a fair trial. *See McCoy*, 208 F.R.D. at 620 (party entitled to CVR recording where, *inter alia*, testimony of crew members may be self-serving).

Other considerations also inform the court's decision to compel production of the CVR audio tape. The plaintiffs in the underlying lawsuit have refused to stipulate to the admissibility of the CVR transcript. Having the CVR recording may help LRNA overcome any authenticity or accuracy objections. Nor is the court convinced that the transcript is the best evidence of what occurred on the night of the crash. The CVR transcript contains the following warning, prominently displayed on the title page:

> The reader of this report is cautioned that the transcription of a CVR tape is not a precise science but is the best product possible from an NTSB group investigative effort. The transcript, or parts hereof, if taken out of context, could be misleading. The attached CVR transcript should be viewed as an accident investigation tool to be used in conjunction with other evidence gathered during the investigation. Conclusions or interpretations should not be made using the transcript as the sole source of information.

(Jt. Stat. Rep., Exh. 1 at I). The court might be inclined to dismiss this boilerplate language were it not for the fact that during its *in camera* review of the CVR audio recording, several sounds were heard that are neither noted nor identified in the transcript.

It is unclear why these sounds are not reflected in the transcript, since other sounds, both identified and unidentified, are noted in the written transcription of the CVR recording. This leads the court to question what other omissions a better trained ear might discover by listening to the audio recording.[5]

### CONCLUSION

LRNA has established that the CVR transcript does not provide sufficient information to ensure a fair trial and that discovery of the CVR audio recording is warranted under 49 U.S.C. § 1154(a)(3). Accordingly, LRNA's motion to compel is granted. AA shall provide LRNA with the unedited CVR audio recording for American Airlines Flight 1420 on June 1, 1999, beginning at 1119:44 and ending after the statement "we're sliding" at 1150:24.4. Such production shall be subject to a protective order limiting use of the recording to the judicial proceeding and prohibiting its dissemination to any person who does not need access. *See* 49 U.S.C. § 1154(a)(4)(A). The parties are directed to submit an appropriate protective order, signed by all counsel, to the chambers of the magistrate judge by ***June 4, 2004***. AA shall produce the CVR audio recording to LRNA within five days after the protective order is entered by the court.

SO ORDERED.

---

**5.** By way of example, First Officer Origel suggested several revisions to the CVR transcript, none of which were made by the NTSB. (*See* Jt. Stat. Rep., Exh. 1 at iv). This illustrates that some of the sounds and statements on the CVR audio recording may be susceptible to more than one interpretation.